MICHAEL N. HUFF, ESQUIRE          ATTORNEY FOR DEFENDANT
Member of the PA, NJ& NY Bars
1333 Race Street
Philadelphia, PA 19107
(215) 567-2120
michael.huff.esq@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | No.: 19-cr-636-009 (JRS) |
| : | |
| v. : | |
| : | |
| **JOHVON COVINGTON** : | |

### DEFENDANT'S SENTENCING MEMORANDUM

TO THE HONORABLE JUAN R. SANCHEZ:

  The Defendant, JOHVON CONVINGTON, by and through his undersigned counsel, Michael N. Huff, Esquire, respectfully submits the following Sentencing Memorandum to assist the Court in determining a fair and just sentence. For the reasons stated herein, Counsel argues that a sentence of time served or house arrest with treatment would be reasonable and sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

**I.  FACTUAL AND PROCEDURAL HISTORY**

  Beginning in around March 2016, the FBI, DEA (Newtown Square Resident Agency ("NSRA"), Delaware Valley Violent Crime Task Force ("DVVCTF") and task force officers from the Chester Police Department Narcotics Unit ("TFO") began an investigation into the so-called "3rd Bone" Drug Trafficking Organization" ("DTO"). The 3rd Bone DTO purportedly operated an open air drug distribution organization on the west side of the City of Chester in the area of the 1100 block of West 3rd Street specifically Pennell and Lamokin Streets. The 3rd Bone DTO was believed to distribute cocaine base ("crack"), cocaine and heroin.

1

On October 23, 2019, a grand jury in the Eastern District of Pennsylvania indicted the following alleged members of the 3rd Bone DTO: (1) Deshaun Davis; (2) Dwayne Butler; (3) Tyleel Scott-Harper; (4) Brandon Scott-Harper; (5) Michael Wright; (6) Isiah Jenifer; (7) Frederick Rochester; (8) Jamel Covington; (9) **Johvon Covington**; (10) Derrick Cooper; (11) Frederick Donaldson; (12) Perley Mack, Jr.; and (13) Shahaad Sterling.

**Johvon Covington** was charged with the following in the Indictment:

|    | Count | Charge | Statute | Date(s) | Codefendant(s) |
|----|-------|--------|---------|---------|----------------|
| 1. | One | Conspiracy to Distribute 280 grams of Crack Cocaine | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and in violation of 21 U.S.C. § 846 | May 2016 and September 2019 | All 13 defendants |
| 2. | Eight (*later withdrawn by the Government*) | Distribution of Crack | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and 18 U.S.C. § 2 | January 18, 2017 | Shahaad Sterling |
| 3. | Nine | Distribution of Crack | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and 18 U.S.C. § 2 | January 24, 2017 | Dwayne Butler |
| 4. | Ten | Distribution of Crack | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and 18 U.S.C. § 2 | February 7, 2017 | n/a |
| 5. | Eleven | Distribution of Crack | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and 18 U.S.C. § 2 | February 23, 2017 | n/a |
| 6. | Twelve | Distribution of Crack | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and 18 U.S.C. § 2 | March 2, 2017 | Dwayne Butler |
| 7. | Thirteen | Distribution of Crack | 21 U.S.C. § 841(a)(1)(A), (b)(1)(C) and 18 U.S.C. § 2 | March 7, 2017 | n/a |

On August 30, 2021, the Government in its *Response in Opposition to the Defendant's Pretrial Motions* (Doc. 301) indicated its intention <u>not to submit</u> Count Eight (8) to the jury. *Response* at p. 1, fn. 1 (8/30/21).  The following six (6) Over Acts (Counts 8 through 13 above) are alleged to have been committed by **Johvon Covington** in furtherance of the conspiracy:

(1) On or about **January 18, 2017**, in the l100 block of 3rd Street in Chester, defendants <u>Shahaad Sterling</u> and Johvon Covington distributed, and aided and abetted the distribution of, approximately .73 grams of crack cocaine to CS-2 for $80;

(2) On or about **January 24, 2017**, in the 300 block of Lamokin Street in Chester, defendants Johvon Covington and <u>Dwayne Butler</u> distributed, and aided and abetted the distribution of, approximately .83 grams of crack cocaine to CS-2 for $80;

(3) On or about **February 7, 2017**, in the 300 block of Lamokin Street, in Chester defendant Johvon Covington distributed approximately .51 grams of crack cocaine to CS-2 for $80;

(4) On or about **February 23, 2017**, in the 300 block of Lamokin Street, in Chester, defendant Johvon Covington distributed approximately .80 grams of crack cocaine to CS-2 for $80;

(5) On or about **March 2, 2017**, in the 300 block of Lamokin Street, in Chester, defendant Johvon Covington distributed approximately .68 grams of crack cocaine to CS-2 for $80 (<u>Dwayne Butler</u> is charged in this Count but his name is not mentioned in the over act section of this transaction); and

(6) On or about **March 7, 2017**, in the 300 block of Lamokin Street, in Chester, defendant Johvon Covington distributed approximately 1.3 grams of crack cocaine to CS-2 for $90.

*Indictment* at p. 44-49 (10/23/2019).

The total weight of the transactions that Johvon Covington is personally alleged to have participated in was a mere 4.17 grams of crack-cocaine.  On October 29, 2019, Mr. Covington

was arrested for the instant offense and was initially incarcerated until November 5, 2019, when he was released on a $100,000 O/R bond. He has been under the supervision of the U.S. Pretrial Services Office since that time. Mr. Covington has not had violations of his pre-trial supervision.

On October 1, 2022, Mr. Covington entered a plea of guilty to Counts One, Nine, Ten, Eleven, Twelve and Thirteen of the Indictment charging him with conspiracy to distribute a mixture and substance containing cocaine base ("crack"), in violation of 21 U.S.C. § § 846, 841(a)(1), (b)(1)(C) (Count One), and six counts of distribution of a mixture and substance containing cocaine base ("crack") and/or aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.SC. § 2 (Counts Nine, Ten, Eleven, Twelve and Thirteen), and not to contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 21 U.S.C. § 853, all arising from the Defendant's participation in a criminal conspiracy to traffic and distribute crack cocaine between on or about May 2016 and September 18, 2019, as well as the Defendant's personal distribution of crack cocaine in connection with that conspiracy, in the Eastern District of Pennsylvania and elsewhere. This Sentencing Memorandum follows.

## II. DEFENDANT'S PERSONAL HISTORY

Mr. Covington is 32 years old and a lifelong resident of Chester. He has a two year old daughter named Janaye Covington. Mr. Covington graduated from Chester High School in 2008. The Defendant has a long work history including construction/contractor, mill work, steel work, carpentry, laborer and retail.

The Defendant was raised by his mother and lived with his maternal grandparents and siblings. The neighborhood where Mr. Covington was raised was not ideal. Mr. Covington

heard police sirens and gunshots outside his home as a child. Mr. Covington and his brother Jamel observed drugs being sold whenever they stepped outside their home.

Mr. Covington ("Coach Jay") is a volunteer coach for the Chester Panthers 13U (12 - 13 year olds) youth football team. He enjoys speaking with his players about avoiding his mistakes and encouraging them to stay on the right path. Mr. Covington has been employed by Endless Pools since May 2021 located in Aston Pennsylvania where he packs pool supplies and equipment to be shipped to customers. He works full time and earns $16/hour.

**III.     SENTENCING CONSIDERATIONS – THREE STEP PROCESS**

The Third Circuit has held that a sentencing court must engage in a three-step procedure as set forth in *United States v. Gunter,* 462 F.3d 237, 247(3d Cir.2006) ("Gunter I") which has been effectively ratified by the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 552 U.S. 38, 128 S. Ct. 586 (2007). *See U.S. v. Levinson*, 543 F.3d 190, 194 (3$^d$ Cir. 2008). "A district court must begin the process by first calculating the applicable advisory Guidelines range. After that initial calculation, the court must then rule on any motions for departures and, if a motion is granted, state how the departure affects the Guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) facts and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the Guidelines." *U.S. v. Tomko*, 562 F.3d 558, 567 (3$^d$ Cir., 2009).

IV. **APPLICATION OF THE STATUTORY MANDATES AND THE UNITED STATES SENTENCING GUIDLELINES TO THIS CASE**

    A. **Statutory Maximums and Mandatory Minimums**

The maximum term of imprisonment on Counts 1 and 9 -13 is not more than 20 years per count. PSR at p. 24, ¶ 107. These are Class C Felonies. PSR at p. 25, ¶ 113. There is no mandatory minimum.

    B. **United States Sentencing Guidelines ("U.S.S.G") Calculations**

The Plea Agreement with the Government stipulated that the Defendant's attributable drug weight is 4.175 grams which puts his base offense level at a 14. This is consistent with the PSR. PSR at p. 14, ¶ 62.

The Defendant has no convictions. Thus, Mr. Covington's criminal history category was properly calculated as a I with a criminal history score of zero (0). PSR at p. 15, ¶ 73-74. Under these calculations, the advisory U.S. Sentencing Guideline range is **10 to 16 months** which falls within Zone C. PSR at p. 24, ¶ 108. **Exhibit B**.

    C. **Zone C of the Sentencing Table**

Under § 5C1.1(d) - If the applicable guideline range is in **Zone C** of the Sentencing Table, the minimum term may be satisfied by -

        (1)    a sentence of imprisonment; or

        (2)    a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

Commentary Application Note 7 provides: "There may be cases in which a departure from the sentencing options authorized for Zone C of the Sentencing Table . . . to the sentencing

options authorized for **Zone B** of the Sentencing Table (under which all or most of the minimum term may be satisfied by intermittent confinement, community confinement, or home detention instead of imprisonment) is appropriate to accomplish a specific treatment purpose. Such a departure should be considered only in cases where the court finds that (A) the defendant is an abuser of narcotics, other controlled substances, or alcohol, or suffers from a significant mental illness, and (B) the defendant's criminality is related to the treatment problem to be addressed."

V.      <u>**PRE-SENTENCE INVESTIGATION REPORT**</u>

The Defendant has no objections or corrections to the Presentence Investigation Report.

VI.     <u>**MOTION FOR VARIANCE - 18 U.S.C. § 3553(a) FACTORS**</u>

The Defendant urges the Court to consider a variance from the advisory Sentencing Guidelines under the factors contained in 18 U.S.C. § 3553(a). In short, the Defendant was not an organizer or leader, has no prior criminal convictions, accepted responsibility and pleaded guilty.

Congress has mandated that a sentencing Court must consider:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed –

    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)     to afford adequate deterrence to criminal conduct;

    (C)     to protect the public from further crimes of the defendant; and

    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission[;]
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

It should be noted that a sentencing court may not prefer a within-Guidelines sentence over a sentence outside the Guidelines. "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable." *United States v. Nelson*, ____ U.S. ____, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009). "[W]e reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, 'may not presume that the Guidelines range is reasonable'" *Id.* (*quoting Gall v. United States*, 552 U.S. ____ , 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). And, since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) which effectively made the United States Sentencing Guidelines advisory, the Supreme Court has continued to emphasize that the purpose of sentencing is to impose a sufficient sentence, but not greater than necessary, to achieve the sentencing goals of retribution, deterrence, incapacitation and rehabilitation. *See Kimbrough v. United States*, 552 U.S. ____ , 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).

1. **The nature and circumstances of the offense and the history and characteristics of the Defendant.**

The nature and circumstances of this crime, as well as Mr. Covington's history and characteristics are outlined in the PSR. As previously indicated, Mr. Covington was not an

organizer, leader or mastermind of this scheme and he has no prior convictions. The Defendant has adjusted well to pretrial release, works full time and is a volunteer coach of the Chester Panthers Youth Football team.

## 2. **The Need for the Sentence Imposed to Promote Certain Statutory Objectives.**

### A. *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The maximum penalty for each of the counts of conviction is twenty years. These potential penalties certainly have the effect of promoting respect for the law. Additionally, Mr. Covington will suffer collateral consequences as a result of his federal conviction. He will be excluded from many types of employment. This conviction will follow him for the rest of his life.

### B. *To afford adequate deterrence to criminal conduct.*

Though a laudable goal, there is simply no empirical evidence to support the idea that lengthier sentences deter criminal conduct. Indeed, the Sentencing Commission itself has found that "[t]here is no correlation between recidivism and offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines offense level is not intended or designed to predict recidivism." *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES at 15, *available at* http://www.ussc.gov/publicat/Recidivism General.pdf.

That said, Mr. Covington's prosecution, conviction and sentencing in a public forum in federal court with a substantial minimum and maximum penalty and advisory guideline range is in and of itself a substantial public deterrence for others who would commit similar offenses.

### C. *To protect the public from further crimes of the Defendant.*

Mr. Covington will likely receive a sentence of incarceration or home detention followed by supervised release. He has no prior criminal convictions and thus it is unlikely that the public is in need of any protection from the Defendant.

### D. *To provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Covington would certainly benefit from educational and vocational training.

### 3-4. The kinds of sentences available and the range established by the Guidelines.

For the reasons already discussed, Mr. Covington urges this court to grant a variance below the sentencing Guidelines. Other similarly situated defendants in this case have received time-served sentences.

### 5-6. Policy Statement and the need to avoid unwanted sentencing disparity among Defendants with similar records who have been found guilty of similar conduct.

As the Court and the public undoubtedly understand, "the United States maintains its distinction as the nation with the highest rate of incarceration in the world. The total correctional population of 6.9 million consists of more than 2.2 million people in prison or jail and 4.7 million under community supervision on probation or parole. The nation's correctional population is a function of crime rates, legislative and administrative policies, and practitioner decision making that vary by state and at the federal level."Porter, N.D. (2015, February) The State of Sentencing 2014, Developments in Policy and Practice. *The Sentencing Project*. Within the last several years, numerous states and the Federal Government have implemented criminal justice policy reforms and legislation in order to combat this dubious distinction <u>especially in cases of non-violent offenses</u>. *Id*. In a speech on July 16, 2015, former Attorney General Loretta Lynch "called for reforms to America's criminal justice system and for the nation to push

beyond the 'cycle of criminality and incarceration' as a way to move forward for justice and civil rights." Connolly, A.R. (7/16/2015) U.S. Attorney General Loretta Lynch calls for justice reforms. *UPI*. Criminal justice reform and mass incarceration are two of the premier issues facing our country. It is respectfully requested that the Court take these factors into consideration in sentencing Mr. Covington.

7. **The need to provide restitution to any victims of the offense.**

The Defendant defers to the court regarding restitution.

VII. **CONCLUSION**

WHEREFORE, for the foregoing reasons, it is urged that this Court vary downward from the guidelines set forth in this case.

Respectfully submitted,

Date: 1/9/2022

MICHAEL N. HUFF, ESQUIRE
1333 Race Street
Philadelphia, PA 19107
(215) 567-2120
michael.huff.esq@gmail.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I, MICHAEL N. HUFF, ESQUIRE, hereby certify that I have served a copy of the attached Sentencing Memorandum upon the following on the Court, the Government and the U.S.P.O by ECF and/or email on the below date.

Respectfully submitted,

Date: 1/9/2022

MICHAEL N. HUFF, ESQUIRE
Attorney for Defendant
1333 Race Street
Philadelphia, PA 19107
(215) 567-2120
michael.huff.esq@gmail.com